## L. FEUSIER & CO., APPELLANTS, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF VIRGINIA, RESPONDENTS.

Where a case is tried by a Judge without the intervention of a jury, and there is an evident error in the calculations of the Judge, upon his own theory of the case, this would entitle the appellant against whom the mistake is made, either to a renewal or modification of the judgment.   When this Court cannot see clearly what the judgment should have been, the case will be reversed.

An attorney who is authorized by a city council to bring a suit for the benefit of the city, has authority to direct a Sheriff to serve the summons in such case, and may bind the city to pay for such service.

Where one person (John Doe, an unknown owner) is sued as the owner of a large number of lots which are delinquent for taxes, and the suit is also *in rem* against the lots, only one copy of the summons should be posted at the court-house door to give notice to John Doe, and one copy posted on each of the lots to support the proceeding *in rem.*

The Sheriff being directed to follow the direction of the Revenue Law, could only charge for one copy of summons for John Doe, and one for each lot served.

Mileage should only be charged for the necessary distance traveled to reach each lot, supposing the officer to start from the court-house—travel to first lot, then to second, and so on to the end of the day.

The law only requires three notices of sale to be posted, and no more could be charged for.

A direction by the attorney of the city to the Sheriff to follow the General Revenue Law, in making service of summons, and notice of sale, did not justify the Sheriff in following the custom of other officers who had been in the habit of performing unnecessary services in order to extort illegal fees.

Where the law clearly points out to an officer the mode of service, we will not believe, on ambiguous and uncertain testimony, that the attorney of the city gave him directions to serve summons, notices, etc., in such manner as could have answered no other purpose than to run up an extortionate bill against the city. If such absurd directions were given, it would be for the Court or jury to determine whether they were, or not, the result of a fraudulent combination against the city.

*Quere?*—If the Sheriff undertook to perform these services under the provisions of the General Revenue Law, which provides that the Sheriff shall when performing such services for the State, receive no fees except in those cases where they are collected from the defendants, is he not bound by this same condition when performing services for the city?

There was no law authorizing the city to bid in the lots offered for sale under this judgment; she derived no advantage from such pretended purchase, and the Sheriff acquired no new rights thereby. Had the lots been actually sold, and the illegal fees charged by the Sheriff actually come into the city treasury, the city might have been estopped to deny the Sheriff's rights.

Per BROSNAN.—The property against which proceedings in this case were instituted, was purchased in, by, and for the city. The city afterwards resold, at least a part of this property. Certainly, as far as it received a benefit from the services of the Sheriff, it must pay for the same.

APPEAL from the District Court of the First Judicial District, Hon. RICHARD RISING, presiding.

To make the points taken by appellants' counsel more intelligible, we extract from their brief the following statement of facts. This extract, together with the statement of facts contained in the opin-

ion of the Court, will fully show the points decided, and the nature of the errors complained of :

" The history of this District Court suit is briefly as follows : On the twenty-ninth day of April, A.D. 1864, the City of Virginia caused this action to be commenced, entitled " *The Mayor and Common Council of the City of Virginia* v. *John Doe, unknown owners, and some three hundred lots,*" as defendants, for the purpose of collecting the delinquent taxes due on said lots for the year 1863."

" Such proceedings were thereupon had, that on the twenty-ninth of June, 1864, judgment was recovered against the said lots, and they were decreed to be sold in due form of law to satisfy the amount of the judgments and costs against each."

Subsequent to this judgment, to wit : on the twenty-second day of July, 1864, the City of Virginia, by its Board of Common Council, adopted a resolution authorizing Mr. Brannon, one of their number, to bid in the lots for the city when sold, for the amounts severally due thereon.

" On the sixth day of August, an order of sale based upon the foregoing judgment was issued, and on the first day of September following, one hundred and ninety-three lots were sold and bid in by Mr. Brannon for the city, for the total sum of $8,572.96, or in other words, for the sum of $2,434.07, the amount of judgment, and the sum of $6,138.89, Sheriff's costs and expenses of sale."

" Certificates of sale were duly issued to the city, and duplicates filed in the Recorder's office, as required by law."

" Some time after this, during the latter part of the year 1864, ·or beginning of 1865, Sheriff Howard's bill for his official services in the foregoing suit was presented to the Common Council, and after some considerable delay and negotiation was finally agreed to by the Board, they offering to pay it in city scrip, and he declining, because he had made some $1,500 advance in gold coin, and wished reimbursment to that extent in kind."

" During the months of March and April, 1865, the city, then claiming to have succeeded to the title of those lots so purchased through Mr. Brannon, proceeded to resell them, and to effect that object passed Ordinances Nos. 123 and 124."

" Sales under these ordinances to some extent were actually had, and deeds subsequently made in pursuance of them to the purchasers from the city."

*Wallace & Gordon*, for Appellants.

The city was estopped by its bid for the lots. Having purchased the lots at the amount of the judgment, including costs, it is no longer in a condition to inquire whether those costs were right or wrong. The city stands just as if the lots had been bought by others, and the amount of Sheriff's costs paid into the city treasury. The city would be bound as having received so much money to the use of the Sheriff, and would have no right to inquire whether the Sheriff came fairly by the money or not.

If we are not right as to the estoppel, taking the items as they are presented in the bill of items, $1,440 for serving 720 copies of summonses should not have been rejected. The necessity of the suit in the form in which it was brought, and the authority for bringing it in that form, are to be found in Ordinance 66 of the City Council.

It was essentially a proceeding *in rem*, and each lot had to be served. (*People* v. *Rains et al.*, No. 2, 23 Cal. 134.)

The city could prescribe no form of action or proceeding different from that prescribed for collecting the general revenue of the territory.

The Sheriff having had summons placed in his hands with direction to serve in a certain way, was bound to follow those directions unless they were in violation of some particular law.

The City Attorney was the proper law officer of the city, and any instructions he gave the Sheriff were binding on him, and also bound the city. The fact that the city was an incorporation did not render it less liable to be bound by the acts of its attorney than an individual would be by his attorney. (See the *Gas Co.* v. *San Francisco*, 9 Cal. 466 ; and *De Goof* v. *American Company*, 21 N. Y. 126.)

The Sheriff was entitled to the whole amount charged for copying summons.

The summons' was in the usual printed form, without blanks large enough to contain all the description of lots, etc., as required in this case. Instead of filling up one of these blanks in the usual way, it referred to the complaint as being attached to and being part of the summons.

As the complaint formed a part of the summons, by this reference the Sheriff could not copy a summons without copying the complaint. If this made an unusual and unnecessary amount of writing in each copy, it was not the fault of the Sheriff. The summons would have been incomplete without some part, at least, of the complaint.

It was not the business of the Sheriff to fish out the material parts. He must take it as it came to him from the Clerk's office.

The charge for making and posting notices of sale should have been allowed, because it was done under the special direction of the City Attorney.

The testimony in the case did not justify the reduction made by the Court on the bill paid for printing.

The charge for filing certificates of purchase should have been allowed.

The law requires the Sheriff to file these certificates, but fixes no fee for the performance of the duty. Therefore, he should have been allowed a reasonable fee.

*Will Campbell*, for Respondent.

This was an action of assumpsit, with two counts. One for official services performed for the city by the Sheriff; the other, for money laid out and expended for the city.

The doctrine of estoppel does not apply to this case. Under the first count the Sheriff or his assignee could not recover for services never performed, nor at a higher rate than allowed by the Fee Bill of 1861. It is hardly contended that the Court did not allow him for all the official services really performed, and as high as the law regulating fees allows.

The allowance under the second count is as great as the evidence in the case justified.

Opinion by BEATTY, C. J., LEWIS, J., concurring.

This was an action brought by the plaintiffs as assignees of Wm. H. Howard, late Sheriff of Storey County, against the respondents, for official services rendered by the late Sheriff to the corporation of the City of Virginia.

The action was for $8,688.60, a part of that sum being for services and expenditures in the Probate Court, and the balance of the demand for services, etc., in a tax suit in the District Court.

A bill of particulars was demanded by defendants, and one was filed as required. The bill of particulars which we find in the transcript contains the items of charges for the services both in the Probate Court and District Court.

The Judge below, in making up his finding of facts, takes the bill of particulars as a basis. From this bill of particulars he deducts certain items and portions of items as improperly charged to defendants.

These deductions amount in the aggregate, as footed up in the transcript, to $5,951.65. There is, however, a mistake in carrying out the Judge's figures in one line to the amount of $20.

The true deduction, on the Judge's theory, should have been $5,971.65. But this $20 will not in any way affect the judgment in this Court. We will therefore adhere to the figures of the transcript, and say the deduction made from the bill of particulars was $5,951.65. The Judge then finds that while the complaint is for $8,688.60, the bill of particulars, after deducting the credits therein contained, is for only $7,273.60, showing a discrepancy between the complaint and bill of particulars of $1,415. He then adds this $1,415 to the amount of deductions made, (say $5,951.65) which makes a total of $7,366.65. This latter sum he deducts from the amount claimed in the complaint, and renders judgment for the balance in favor of the plaintiffs. That judgment was for $1,321.95. From this judgment plaintiffs appeal. This deduction of $1,415 for the discrepancy between the sum claimed in the complaint and the footing up of items in the bill of particulars, is evidently a mistake. The bill of particulars foots up on the debit side $8,042.90. From this amount is to be deducted a credit of $113,

leaving the actual amount claimed in the bill of particulars $7,929. 90, or $656.30 more than the Court below estimated.

If we deduct from this the clerical error of $20 made on the other side, still the judgment for plaintiffs is less by $636.30 than it should be on the theory of the Judge in whose Court it was rendered. This would entitle the appellants either to a reversal or modification of the judgment. As there are other matters at issue in this case, on which this Court is not able, from the confused statement of facts in the transcript, to arrive at a proper conclusion, we will reverse the judgment, and order a new trial.

But before sending back the case we will, as far as practicable, dispose of the points raised on this appeal. The bill of items in the transcript is for services in connection with several suits in favor of the city in the Probate Court, and one suit only in the District Court.

There seems to be no complaint as to the rulings of the Court below with respect to the costs in Probate Court. The only open question is, what should have been the costs allowed for services in the District Court suit. The facts in regard to this suit, so far as we can understand them, are as follows : Two hundred and seventy-eight lots in the City of Virginia, which were assessed to unknown owners, were delinquent for the taxes of the year 1863. The city Board of Aldermen passed an ordinance in regard to the collection of city taxes, the thirty-first section of which reads as follows :

" After the publication, as in the last section provided, it shall be the duty of the City Attorney to institute proceedings in any Court of competent jurisdiction to enforce the payment of taxes due the city, and in every case in which suits are so brought, if judgment be obtained, the Court in which such judgment is rendered shall tax, as City Attorney's fees, twenty-five per cent. on the amount recovered, which shall be collected from the defendant, but in no event to be a charge against the city ; and shall also tax the same fees to other officers as are allowed such officers for similar services in civil cases."

Acting under this ordinance, the City Attorney brought suit against John Doe, the unknown owner, and the two hundred and seventy-eight lots. It seems however, that there was by mistake

one whole tier or range of lots included in this number which had no existence in the city. This reduced the number of delinquent lots, but to what extent is not clearly shown by the transcript. The statements of the Deputy Sheriff, who made the service, are not intelligible on this point. But the judgment was against two hundred and forty lots, and this was probably the true number of delinquent lots on which service was made, or attempted to be made. It is true, the Judge in his findings says that service was made by posting on two hundred and fifty-eight of the lots. But this is probably a mistake. The Under Sheriff, who kept the books of the office, charges for seven hundred and twenty copies of summons, complaint, etc., and he shows, if we understand his testimony, that there were three copies posted for each lot. This would make the number of lots served two hundred and forty, corresponding with the judgment.

The question for determination is, what compensation should be allowed the assignees of the Sheriff for services in connection with the suits against these lots.

It is contended on the part of the city that there was no law authorizing this suit *in rem* against the lots, and therefore the charges made by the Sheriff for service on the lots should be totally disregarded: that they are not legitimate charges, and cannot be maintained against the city.

The City Attorney brought the suit in this way. It was within the sphere of his duty to determine in what manner suit for delinquent taxes should be brought. Having brought the suits and directed the manner of service, we think it was the duty of the Sheriff to serve the summons, as directed by the City Attorney. In this particular we think the attorney properly represented the city.

The Under Sheriff asserts that the City Attorney directed him to pursue the General Revenue Law in serving summons in this case, and that he acted under that instruction.

We will examine now what the General Revenue Law requires, and what fees the Sheriff could charge for such services.

The General Revenue Law provides that where there is a suit *in rem* against the delinquent property, service shall be made by delivering a copy of the summons to parties in possession of that property,

and posting a copy on the property. (See Section 40, Revenue Law 1862.)

It does not in such case provide for posting copies at the court-house or any other public place. In regard to the unknown defendant, John Doe, one copy of the summons might have been posted at the court-house door to give him notice. But there was no pretense for posting two or three hundred copies of the summons at the court-house door or any other public place.

Perhaps the best way to express our views as to this case will be to take the bill of particulars, item by item, and compare it with the Fee Bill.

The first charge in this bill is for serving 720 copies of summons; if the law had been followed, only 241 copies could be charged for —one for each lot, and one for John Doe.

Next for making 720 copies; this should have been for making 241 copies.

The next charge is $359.50 for mileage; this is entirely extravagant. The mileage allowed by law is only forty cents a mile for going only to serve a summons. And if a number of summons could be served by the same travel, only one mileage can be charged. Here the most distant lot was only one mile, so if separate mileage was charged on each lot it would only amount to $96. But as a number of lots might be reached by traveling not over one mile from the starting point at the court-house, perhaps not more than one-tenth of that amount should be charged. This must be a matter of proof. If a party could on an average reach ten lots in a mile's travel from the court-house, there should be allowed forty cents for each ten lots, and so in proportion, if the distance to be traveled should exceed or fall short of one mile for each ten lots, for the entire two hundred and forty.

There is a charge of $1,240 for posting 620 notices of sale. The law required three such notices, and no more. There is nothing requiring a separate notice of sale to be posted for each separate piece of property.

Five hundred and sixty dollars is charged for advertising sale in newspaper. The law requires one notice to be published once a week for twenty days. The city would only be responsible for the reasonable

price of such advertisement—say for three weekly insertions of such notice. The Court, in allowing $75 for this item, probably allowed a liberal price. But this will be the subject of proof. There is no dispute about Sheriff's commissions.

The next charge is for making 386 certificates of sale. The Sheriff was only allowed here to charge for one certificate and a duplicate, say two copies in all. He charges $193 for filing duplicates. He was entitled to just fifty cents for filing one duplicate. He should have been allowed to charge for stamps on one certificate only.

We have stated in the foregoing part of this opinion, what we thought to be the legitimate charges for services in a case where a suit was brought, under the General Revenue Law, against one unknown owner and a number of delinquent lots.

There are however behind this several other questions. The Under Sheriff states distinctly that the City Attorney directed them, at the Sheriff's office, to pursue the General Revenue Law in making service in this case. He then states that they did make service in the same manner as collectors did. In other words, if we understand him, other officers had been in the habit of serving three copies, when the law only required one; and if other officers had been in the habit of thus trebling the amount of fees the law allowed, the Sheriff might do the same. That the Sheriff would have been justified by many precedents in coming to such a conclusion, we are fully aware. But this Court is not yet prepared to hold that when one officer extorts illegal fees, all his successors will be justified in following the precedent.

The Under Sheriff also says that the City Attorney directed him to post copies on the court-house door, and in another public place in the city. These last statements, however, were made in response to leading interrogatories. Although asked several times about what were the directions of the City Attorney, he said nothing of this until led right up to that point by questions in the most objectionable form. We are charitably inclined to think the witness did not intend to say that the City Attorney gave instructions in this language; but merely that he instructed witness to serve as the General Revenue Law required in such cases; and the witness him-

self concluded that the summons should be posted on the court-house door and some other public place, because some other officer had pursued that course. Where there is no ambiguity in the law we cannot, without clear and satisfactory evidence, believe the City Attorney gave any such absurd instruction, which could have answered no other purpose but to run up an exorbitant bill against the city. If such instructions were given, (and we can but repeat that we think the thing highly improbable) there not being the slightest ambiguity in the law, it would then be a question for the jury or Court below to determine whether this was not evidence of fraud or combination to extort illegal fees from the city.

Again, if the Sheriff was directed to pursue the General Revenue Law, and he acted under that law, was there not an implied contract that he would be bound by the provsions of that law so far as his fees were concerned? Or in other words, could he legally collect fees from the city for services which the very law under which he was proceeding declares shall only be collected from the delinquents or property on which the taxes are delinquent? As this point has not yet been fairly presented in the case, and proof may be introduced as to what was the understanding on this point, we will not now attempt to determine it. The law did not require the Sheriff to make any such services, and if the City Attorney required such to be made, the Sheriff might have refused without the payment of his fees in advance. Or he might have made the service, trusting to the promise of the City Attorney that his fees should be paid by the city at some future time; or he might have made them, trusting to his ability to collect from the delinquents.

The appellant contends the city was estopped from denying the validity of this claim, because after judgment the City Council authorized some person to bid in these lots at the Sheriff's sale for the benefit of the city. That those bids were for the amount of the taxes due on each lot, and its proportionate share of the costs. That the city having thus had the benefit of these over-charges, cannot now say they were not legitimately a part of the judgment.

Had these lots been actually sold and the money for costs paid into the city treasury, perhaps there would have been some force

in this position. But the lots were not sold. The city derived no benefit from the illegal costs thus added to the taxes.

Besides, there was no law or authority allowing the city corporation to buy city lots sold for taxes, that we are aware of. That part of the proceeding was utterly void and without any authority. No rights were thereby conferred on the Sheriff that he did not before possess.

Judgment reversed, and a new trial granted.

Separate opinion by Brosnan, J.

I concur in the judgment of reversal and order granting a new trial in this case; and as the action is to be retried, I consider it a duty to state that a well established rule or principle of law involved in this case, in my opinion, has not received due consideration, if it has not been entirely overlooked on the former trial.

The suit in the District Court referred to was instituted by the City Attorney under the direction and authorization by ordinance of the corporate authorities. The property of delinquents was sold under and by virtue of an execution issued upon the judgment recovered in that action, and was purchased at such sale by and for the city. The city authorities assuming that the title to the lots vested in the corporation under the execution sale, afterwards by ordinance advertised for sale and sold several parcels of the land designated, together with the improvements on them, as " belonging to the City of Virginia."

This ordinance, among other things, provides that twenty per cent. of the purchase money should be paid at the time of sale, to be forfeited to the city in the event of the purchaser failing to pay the residue to the Mayor of the city within five days. It also provided that the Mayor should execute and deliver deeds of the city's interest to the purchasers—the conveyances to be drawn by the City Attorney ; and that the Mayor, after deducting the costs and expenses of advertising and selling, should pay over the residue of the money realized to the City Treasurer.

It further appears from the record, as stated under oath by the City Attorney, that he prepared conveyances of lots sold at such last mentioned sale, as directed by the city authorities.

On this point his testimony reads as follows :

" I prepared several of them [of the deeds] ; they were signed by the Mayor, witnessed by myself, and delivered to the purchasers. The lots sold by the city were part of those sued for delinquent taxes in the District Court suit "—the suit referred to in the complaint.

What number of lots were thus disposed of, or what amount of money, if any, was realized from forfeitures, or realized from such sales by the city, does not appear from this strange record.

It is however evident therefrom, that the city derived some benefit from the services of Sheriff Howard, for which he was legally entitled to receive a reasonable compensation.

Now, discarding from consideration for the present the question whether the corporation had any right or power to sell or purchase the property designated, and without inquiring how far it may be equitably estopped from repudiating the acts of its chosen and appointed agents under the circumstances of this case, it answers my purpose to state, as matter of law, that a municipal corporation cannot receive to its use the labor or the property of a party and shield itself from responsibility.

Like a private individual, it becomes liable by implication. The law implies a promise to pay in such cases. No principle is better established than this by the authorities. (8 Pick. 177 ; 9 Cal. 453 ; 3 Levy & Rawle, 117 ; 14 Pa. State Rep. 81.)

How far any part of this case may be brought within the operation of this rule upon another trial, I cannot determine. This is properly the province of plaintiff's legal advisers.